**DIOCESE OF SAMOA PAGO PAGO, Plaintiff**

**v.**

**K.M.S.T. INC. and JUM YONG JONG, Defendants**

**NELSON & ROBERTSON PTY., LTD. and SHANTILAL BROTHERS, LTD., Intervenors**

High Court of American Samoa
Land and Titles Division

LT No. 18-90

February 13, 1991

Before REES, Associate Justice, TAUANU'U, Chief Associate Judge, and MATA'UTIA, Associate Judge.

Counsel: For Plaintiff, Charles V. Ala'ilima
For Defendants, Togiola T.A. Tulafono
For Intervenor Nelson & Robertson, John L. Ward II
For Intervenor Shantilal Brothers, Gata E. Gurr

This case concerns some of the same parties as our recent opinion in *Shantilal Brothers, Ltd. v. KMST Wholesale, Inc.*, 15 A.S.R.2d 115 (1990). It also presents a slightly different aspect of the same issue: the priority of liens among (1) the named mortgagee in a recorded document purporting to create a mortgage on all or essentially all the property owned by the mortgagor, but not describing any particular thing subject to the mortgage; (2) a judgment creditor of the named mortgagor, who had levied an execution upon certain property of the mortgagor/judgment debtor and caused it to be sold at a marshal's sale; and (3) another judgment creditor who had not levied an execution upon the subject property, but whose judgment was of earlier date than that of the creditor who had executed.

Intervenor Nelson & Robertson, the purported mortgagee, repeats the position we rejected in *Shantilal, supra*: that a reference in a mortgage to all a mortgagor's property within a certain class amounts to a description of each item within the class. For reasons we discussed at length in *Shantilal*, we reject this proposition. The common-law courts were sharply divided on this question. *See Shantilal Brothers, Ltd. v. KMST Wholesale, Inc.*, 16 A.S.R.2d 103, 104 (1990), and authorities cited therein. The Uniform Commercial Code resolved the question in other jurisdictions by providing that "any description . . . is sufficient *whether or not it is specific* if it reasonably identifies what is described." U.C.C. § 9-110 (emphasis added). Our Fono chose not to adopt the Uniform Commercial Code but instead to resolve the question just as decisively the other way. The second article of American Samoa's brief Commercial Code provides that a mortgage or other security device, in order to be effective against the world upon recordation, must "contain[] a description of the specific article, articles, or land . . . mortgaged." A.S.C.A. § 43.1510. The mortgage in this case, which was the same one involved in *Shantilal*, contains no such description.

This case is different from *Shantilal*, however, in one important respect: the record in that case contained no indication that the levying

judgment creditor knew anything about the intervenors' mortgage until after it had secured its writ of execution. In the present case we judicially notice that the levying judgment creditor in this case, the Diocese of Samoa Pago Pago, acquired knowledge of the existence of the mortgage before it secured its writ. We know this because the Diocese was represented in the various hearings having to do with the post-execution motions in *Shantilal*, at which the present Intervenor's mortgage was the guest of honor. Neither the Diocese nor Shantilal (also an intervenor in the present case) appears to have had any knowledge of intervenor Nelson & Robertson's mortgage before judgment, however.

Because our statute provides only that certain conditions (including the description of specific items) must be met in order for a mortgage to be valid "as to persons who do not have actual knowledge thereof," intervenor Nelson & Robertson argues that this case is distinguishable from *Shantilal*. Intervenor argues that its mortgage became binding on the Diocese as soon as it acquired actual knowledge of the document, notwithstanding that the description of mortgaged goods was insufficient to bind a person without actual knowledge.

Intervenor Nelson & Robertson appears to be correct in its argument that there was no such thing as a judgment lien at common law, and that a judgment creditor who acquired knowledge of an unrecorded mortgage at any time before executing upon specific property of the debtor would therefore have been bound by the mortgage unless he were lucky enough to live in a jurisdiction with statutory judgment liens. *See generally* 46 Am. Jur. 2d, Judgments §§ 237-45. American Samoa has no statutory judgment lien; instead, our statute on execution of judgments strongly implies that a judgment creditor's lien attaches at the moment he gives his writ of execution, duly issued and describing specific property, to the marshal or other officer who will enforce it. A.S.C.A. § 43.1523. Inasmuch as (1) the holder of an unrecorded or deficiently recorded mortgage could acquire a lien superior to any right of prior unsecured creditors of the mortgagee by properly recording his mortgage, (2) a judgment creditor would appear to be an unsecured creditor until the moment he gives his writ of execution to the marshal, and (3) our statute clearly seems designed to make "actual knowledge" a complete substitute for the constructive knowledge provided by recordation, we conclude that intervenor's mortgage would have become binding on the Diocese the moment it found out there was such a mortgage ---- *if* the deficiency in the mortgage had arisen from nonrecordation or improper recordation.

The problem with this mortgage, however, was not that it was

deficiently recorded. The problem was that it was not a mortgage at all; it did not purport to create a security interest in any particular thing, but in everything. Such documents were never treated as deficiently *recorded*; rather, they were treated by some courts as perfectly valid and by others as deficient in themselves. Where the problem with a mortgage has to do with the process by which the world is supposed to receive constructive notice of it, it makes sense that actual knowledge should serve as a complete substitute for such constructive notice. When the problem has to do with the inadequacy of the mortgage itself, as is the case with insufficiencies of description, no amount of knowledge that the deficient document exists can cure the deficiency. *See, e.g., Arro Oil & Refining Co. v. Montana Dakota Grain Co.*, 286 P. 1115 (Mont. 1930); *Strong City Gin Co. v. Herring & Young*, 79 P.2d 582 (Okla. 1938).

The language of our statute, it is true, can be read to contain a negative, pregnant inference that actual knowledge cures any deficiency at all. Because the statute says deficient (or deficiently recorded) mortgages are *not* binding on persons without actual knowledge, the argument goes, the statute must mean that they *are* binding on persons with actual knowledge. But such a reading wrenches the language from its purpose. Some of the requisites provided by the statute have to do with the manner of recordation, and we have no doubt that actual knowledge is a substitute for deficiencies in these respects. Others, such as the requirement that the mortgage be in writing, be signed by the mortgagor, and include a description of the specific article or articles mortgaged, go to the essence of the document.

To argue that *any* problem in a purported mortgage, not just problems in recordation, can be cured by actual knowledge leads to absurd results. According to this argument, a selectively binding mortgage would be created when a debtor should say to one of his creditors, "Bill, as far as I am concerned your debt is secured by everything I own. I want you to take ahead of everyone else." Assuming that the debtor subsequently refused to put this statement in writing or to sign a writing incorporating its terms, the "mortgage" could never be recorded, for several excellent reasons. To those creditors unfortunate enough to have been within earshot, however, or to be told about the conversation years later just as they were about to hand the marshal their writs of execution, it would be dispositive. The statute, after all, only says that a mortgage must be written and signed in order to be valid as to persons "without actual knowledge."

70

We reject this approach in favor of one that reads the "actual knowledge" language in light of its purpose. There is no question that the judgment creditors in this case had constructive knowledge of intervenor's mortgage from the moment it was recorded. For the reasons we have set forth in *Shantilal*, this constructive knowledge made no difference because it was knowledge of a mortgage that did not apply to any particular thing. For the same reasons, the actual knowledge the judgment creditors acquired after they had secured their judgments did not affect their right to execute upon specific property of the debtor.

We hold that the Diocese acquired a lien on the subject property when it gave its writ of execution to the marshal. Shantilal's prior judgment did not give it a lien superior to that of the creditor who levied upon the property first. *See* A.S.C.A. § 43.1523. Nor did the deficient mortgage or the Diocese's knowledge of it create a prior lien. The Diocese is therefore entitled to the proceeds of the marshal's sale, the total amount of which is smaller than the amount of its judgment against K.M.S.T. The stay of distribution will be denied.

This order is stayed for ten days or until the disposition of any timely filed motion for reconsideration or new trial, whichever comes last.

It is so ordered.